E-FILED
Friday, 08 July, 2016 07:05:51 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASON T. GMOSER,<br>f/k/a John Doe #4,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 14-CR-20048 |

**THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys James A. Lewis, United States Attorney for the Central District of Illinois, Elly M. Peirson, Trial Attorney, and Keith A. Becker, Acting Assistant Deputy Chief, hereby submits this memorandum addressing the objections to the revised presentence report ("PSR") and the government's sentencing position.

**I. The Defendant's Conduct**

The United States proved Defendant Jason T. Gmoser ("Gmoser" or "defendant") guilty of Counts 1, 2, and 3 during a week-long jury trial in this case that commenced the week of February 8, 2016. Gmoser was one of a small handful of leaders of a vast, global and technologically sophisticated conspiracy to promote the sexual abuse of children and the trafficking of child pornography through a prolific online bulletin board ("the Website"). PSR ¶17-24. By July of 2014, the Website was the largest and most sophisticated members-only child pornography website in existence -- boasting nearly 30,000 members, with Gmoser's contribution exceeding

2,000 postings. PSR ¶23, 28. The Website operated on the Tor anonymity network and required its users to upload and share child pornography to gain and keep membership or advance in status. PSR ¶18-22. As an active part of the administrative staff, Gmoser enforced the rules of the board, reprimanded members for violations of the rules, promoted members giving them more access to the fruits of the crime and recruited new producers.

In addition to the administrative actions detailed in the PSR (¶33-34), the United States also presented evidence to the jury showing the defendant's authority, dominion and control over the various members' access to the board. *See* Trial Exhibit 3B (showing moderator actions such as reprimanding a member for posting the same material twice and correcting password errors to allow members to access the fruits of the crime); Trial Exhibit 18 (indicating that Gmoser has taken sole responsibility for VIP upgrades); and Trial Exhibit 8B-17(showing the level of sophistication Gmoser exhibited by engaging in multiple actions simultaneously to advance the goals of the criminal enterprise).

## II. Guideline Objections

### A. The Defendant was a leader/organizer

The United States has one objection to the findings in the PSR. The final report correctly encompasses the defendant's conduct, but undervalues his role in the extensive criminal enterprise. The defendant participated in an online community dedicated to the advertisement and distribution of child pornography involving tens of

thousands of users and victims over a period of more than two years. Among that group of tens of thousands of members, he was one of a handful of individuals ranked at the level of co-administrator or higher who helped maintain and administer the site. His conduct clearly rises to the level of an organizer or leader pursuant to U.S.S.G. § 3B1.1(a) and this Court should accordingly apply the enhancement.

A defendant who is more criminally culpable should receive the harsher organizer/leader enhancement based on his role in the offense. *United States v. Weaver*, 716 F.3d 439, 442 (7th Cir. 2013); U.S.S.G. § 3B1.1(a). "A 4–level increase is warranted under § 3B1.1(a) if the defendant participated in a criminal activity involving at least five participants (including himself) and organized or led at least one of the other participants." U.S.S.G. § 3B1.1(a); *United States v. Haywood*, 777 F.3d 430, 433 (7th Cir. 2015). The Guideline Application Notes for Section 3B1.1 give the Court insight on the commission's intent in applying this enhancement:

> This section provides a range of adjustments to increase the offense level based upon the size of a criminal organization (i.e., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense. This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate. *The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility.*

U.S.S.G. § 3B1.1 (emphasis added).

**1. Size and Scope of Criminal Organization**

U.S.S.G. § 3B1.1 directs the district court to increase a defendant's offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants...." *United States v. Cooper*, 767 F.3d 721, 733 (7th Cir. 2014) *cert. denied,* 135 S. Ct. 1015, 190 L. Ed. 2d 884 (2015) and *cert. denied sub nom. McDowell v. United States*, 135 S. Ct. 1016, 190 L. Ed. 2d 884 (2015). The criminal organization here involved a global organization composed of tens of thousands of participants, each contributing the success of the widely extensive global criminal enterprise.

**2. Defendant's Role in the Organization**

In determining whether the defendant held a leadership or organizational role, the district court should consider, among other things, "the exercise of decision making authority, the nature of participation in the commission of the offense, ... the degree of participation in planning or organizing the offense, ... and the degree of control and authority exercised over others." § 3B1.1 cmt. n. 4; *United States v. Reynolds,* 714 F.3d 1039, 1043 (7th Cir. 2013), *United States v. Robertson,* 662 F.3d 871, 877 (7th Cir. 2011). "The central concern of § 3B1.1 is the defendant's relative responsibility for the commission of the offense." *United States v. Vasquez,* 673 F.3d 680, 685 (7th Cir. 2012) (quoting *United States v. Mendoza,* 576 F.3d 711, 717 (7th Cir. 2009)).

The United States presented evidence of postings/messages the defendant made to members promoting their status, thereby giving them more access to the fruits of the organization. In addition, the defendant warned members about how to maintain their

anonymity and security ensuring the success of the criminal organization. Further, the defendant warned members who violated the rules of possible reprimand, exhibiting his authority. The defendant was integral in the success of the criminal enterprise, he played a prominent role in recruiting, directing and ensuring the success of this extensive operation. *See United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir. 1989) ("Organizers and leaders of criminal activity play an important role in the planning, developing, directing, and success of the criminal activity. Thus, organizers and leaders generally are deemed more culpable than mere managers or supervisors.").

While there were a few persons on the administrative team that were higher in the hierarchy than the defendant, that is not the end of the court's analysis. "Although the nature and purposes of the enhancement certainly require the defendant to have played a leading role in the offense, he need not literally have been the boss of his cohorts in order to qualify for the enhancement, for a leader can influence others through indirect as well as direct means." *United States v. Wasz*, 450 F.3d 720, 729-30 (7th Cir. 2006). Gmoser clearly directed and controlled other members' actions and enforced rules to advance the goals of the conspiracy.

The organization at issue had nearly 30,000 members. That included one head administrator, four site administrators, and eight co-administrators (including Gmoser and three of Gmoser's co-defendants). Even if five of the 30,000 other members of the conspiracy arguably had different or greater authority than Gmoser, his conduct in this extensive conspiracy warrants that he be held to a higher level of responsibility. *United*

*States v. Cooper*, 767 F.3d at 732 (finding the four-level, rather than two-level enhancement applied because the defendant "exercised decision making authority over the drug operation, gave instructions to other participants, and resolved consumer disputes"); *United States v. Jones*, 763 F.3d 777, 815 (7th Cir. 2014) *vacated sub nom. United States v. Drake*, 774 F.3d 1104 (7th Cir. 2014) and *cert. denied sub nom. Young v. United States*, 135 S. Ct. 2068, 191 L. Ed. 2d 969 (2015) (rejecting the defendant's argument that the four-level enhancement should not apply because he was a mere "buyer and seller of drugs in a large-scale conspiracy" but "did not have any 'real or direct influence' over other members in the conspiracy"); *United States v. Kennedy*, No. 12 CR 284, 2014 WL 2742798, at *9 (N.D. Ill. June 12, 2014) (even if other participants were higher in the hierarchy of the organization, the defendant could still receive a four-level increase, "as there can be more than one organizer or leader"); *United States v. Williams*, 250 F. App'x 725, 730 (7th Cir. 2007) (finding the four-level enhancement applied to defendant who "recruited accomplices" to participate in "sex parties," where they created sexually explicit photos and videos of minors, some of which he posted on his website).

The § 3B1.1(a) enhancement has been upheld in contexts similar to this case. In *United States v. Tagore*, 158 F.3d 1124 (10th Cir. 1998), the Tenth Circuit upheld the imposition of a § 3B1.1(a) enhancement regarding a defendant who was a member of an on-line "chat room" used by members including that defendant to "discuss child pornography" and to "trade digital image files via computer." 158 F.3d at 1126-27. The Tenth Circuit found that the defendant acted at least as an organizer of the

conspiracy in part because he "operated an important ftp site through which he coordinated distribution of the members' pornography and provided members with copies of previously distributed pornography," and "coordinated approval of new chat room members," all of which made his role "critical to the success of the organization." Id. at 1127. In *United States v. Reedy*, the Fifth Circuit upheld the application of a § 3B1.1(a) enhancement involving a "sophisticated, international child pornography scheme." 304 F.3d 358, 370-371 (5th Cir. 2002). The Court noted in that case that the criminal activity itself "involved at least five knowing participants . . . [engaged in] the transportation, for remuneration, of child pornography all over the world via the Internet." *Id*. The *Reedy* Court found that the defendant "actively recruited Webmasters to utilize" the service and "determined whether the Webmaster would be cut off from the system." *Id*. Similarly in *United States v. McGrath*, No. 8:12CR422, 2014 WL 351975, at *7 (D. Neb. Jan. 31, 2014), the court found that defendant qualified as a leader or organizer under U.S.S.G. § 3B1.1(a), for child pornography websites he maintained, administered and participated in.

Gmoser's extensive involvement the Website parallels the factors the Tenth and Fifth Circuits and District of Nebraska found sufficient to support the § 3B1.1(a) enhancement in *Tagore, Reedy* and *McGrath*. Gmoser did everything necessary for the website to operate and succeed as a community in which he and other users could sexually exploit children online. Accordingly, the § 3B1.1 enhancement is amply supported.

**B. The Defendant's Objections**

**1. Sexual Contact and the Application of §4B1.5(b) Repeat and Dangerous Sex Offender Against Minors**

Gmoser asks this court to ignore the multiple admissions he made to law enforcement, mental health professionals, and his co-defendants detailing his sexual abuse of a minor, as being the result of "mental illness, rather than actual events." To the extent the defendant claims that factual statements in the PSR are inaccurate, he bears the burden of providing evidence to the contrary. *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007). Gmoser cannot meet his burden because there is no supporting evidence in the record that he suffers from any mental illness that is symptomatic of fabricating sexual abuse of minors. In fact, neither his 2010 diagnosis from the Menninger Clinic nor the highly questionable opinions of Dr. Bassman raise any suggestion, let alone proof, that Gmoser's admissions regarding sexual abuse were untruthful.

Notably, even if the court were persuaded to discount the defendant's multiple admissions of his sexual misconduct with the minor, he is nevertheless eligible for the 4B1.5(b) enhancement because he used, coerced and enticed the minor to produce child pornography. § 4B1.5 cmt. nn. 2, 4; *United States v. Schmeilski,* 408 F.3d 917, 920 (7th Cir.2005); *United States v. Shea,* 493 F. App'x 792, 794 (7th Cir. 2012); *United States v. Corp,* 668 F.3d 379, 391–92 (6th Cir.2012). Therefore the 5-level enhancement for repeat and dangerous sex offenders of minors is applicable and warranted in this case.

**2. Acceptance of Responsibility**

Gmoser claims he is entitled to credit for accepting responsibility, despite having proceeded to trial, asserted an affirmative defense, claimed that admissions he has made regarding sexual abuse he perpetrated were false, and expressed neither any remorse nor any actual responsibility for his actions. While it is theoretically possible that a defendant may be eligible for a reduction in his offense conduct for acceptance of responsibility even if the defendant proceeds to trial, acceptance credit is clearly not warranted here.

"Acceptance of responsibility means that 'the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct.'" United States v. Beserra, 967 F.2d 254, 255 (7th Cir. 1992)(quoting U.S.S.G. § 3E1.1(a).). There is no indication that Gmoser has done so here. Gmoser has submitted no information to U.S. Probation or to the Court that indicates any acknowledgement, acceptance of responsibility or remorse for his crimes.

Moreover, the defendant did not (and does not) admit all of the factual allegations in this case. The Government proved the essential elements of his charged conduct, to which he did not stipulate. The Guidelines explain that the § 3E1.1 "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *United States v. Hamzat,* 217 F.3d 494, 500 (7th Cir. 2000) (quoting U.S.S.G. § 3E1.1 Application Note 2); *see also*

*Cunningham,* 103 F.3d at 598 (stating that a reduction for acceptance of responsibility generally is not available for defendants who go to trial to contest "the essential factual elements of guilt" (quoting U.S.S.G. § 3E1.1 Application Note 2)).

The core of Gmoser's argument appears to be that by unsuccessfully claiming to have been not guilty by reason of insanity, he is entitled to credit for accepting responsibility. That is simply not the case. *See United States v. Reno*, 992 F.2d 739, 745 (7th Cir. 1993)(affirming denial of acceptance of responsibility credit to defendant who raised insanity defense). While a legal challenge to the applicability of a statute to a defendant's actions does not necessarily exempt the defendant from an acceptance of responsibility reduction, *United States v. Hendricks* 319 F.3d 993, 1009 (7th Cir. 2003), Gmoser must demonstrate an actual acceptance of responsibility, not just a potential (and unsuccessful) legal defense to it. By denying his culpability for the crimes charged and not accepting any responsibility for them, he is denying conduct that the jury found him guilty of. For this reason, he should not be granted a reduction for acceptance of responsibility. *See United States v. Williams,* 202 F.3d 959, 962 (7th Cir. 2000) ("If a defendant challenges factual evidence of guilt as well as legal principles, however, he typically will be ineligible to receive the acceptance of responsibility reduction.").

Ultimately, the United States agrees with the Probation Officer's analysis. The defendant demanded a trial to factually prove that he knowingly participated in the criminal enterprise. The jury disagreed with him and found him guilty of participating

in the enterprise, based on facts that the government proved and that the defendant contested. He continues to contest at least some of those facts. He expresses neither responsibility, remorse nor any ownership of his own conduct. Simply put, he has not accepted responsibility.

## III. The Sentencing Position of the United States

Regardless of how the court rules on the government's objection to the defendant's conduct rising to the level of a leader/organizer, the revised presentence report ("PSR") correctly calculates a rare off-the-chart advisory sentencing guidelines at a level 49 (or 50, with the leader/organizer enhancement), which is reduced to 43, therefore Gmoser's guidelines range is life. U.S.S.G. Ch.5 Pt.A, app. n.2. Based on the evidence proven beyond a reasonable doubt at trial, the United States agrees with the probation officer's recitation of the offense conduct and his guidelines calculation and requests that the court impose the guideline sentence of life imprisonment.

In crafting a sentence for the defendant, the court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed:
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational

training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for:

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...

(5) any pertinent policy statement:

(A) issued by the Sentencing Commission ...

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As properly calculated by the Probation Office, Gmoser's guideline range is life. The statutory ranges on Count I, Engaging in a Child Exploitation Enterprise, is a mandatory minimum of 20 years to life imprisonment, on Count II, Conspiracy to Advertise Child Pornography, is no less than 15 years to 30 years imprisonment and on Count III, Conspiracy to Distribute Child Pornography, no less than 5 years to 20 years imprisonment. Considering the specific facts of this case and in an abundance of caution, the government requests at the time of sentencing that the Court vacate the jury's verdict on Count II, Conspiracy to Advertise Child Pornography, as a lesser-included offense of Count I, Engaging in a Child Exploitation Enterprise, to avoid double-jeopardy concerns. In the event that the conviction on Count I were to be

reversed, the Seventh Circuit could then either reinstate the verdict on such a lesser-included offense or order this Court to do so and resentence the defendant. *See Rutledge v. United States*, 517 U.S. 292, 305-06 (1996).

*1. Nature and Circumstances of the Offense.*

Gmoser and his co-conspirators operated and administered a sophisticated, global enterprise dedicated to the advertisement and dissemination of child pornography. It catered to the worst-of-the-worst online child exploitation offenders, including numerous child pornography producers who were actively abusing children. Gmoser and his co-conspirators also went to great lengths to hide their conduct from law enforcement -- not only using hidden services on the Tor anonymity network to mask his conduct, but also protecting his collection of the most gruesome and violent images of child pornography torture available with an elaborate encryption program. This Court heard testimony that his vast child pornography collection, including the largest amount of media several veteran law enforcement officers had ever seen, was carefully secreted behind multiple layers of protection designed to thwart law enforcement and that it would have taken law enforcement multiple generations of examiners to brute force his 42-character encryption code. Given his brazen and premeditated conduct, there is reason to believe that Gmoser will never be rehabilitated and that a sentence which ensures that he will never have access to a child again is the best way to protect the public.

*2. The need for the sentence imposed to reflect the seriousness of the offense, to*

*promote respect for the law, and to provide just punishment for the offense*.

The seriousness of this offense cannot be overstated. The defendant has affected not only the lives of minors he himself coerced and enticed through online video games, but also the lives of numerous other children whose images were traded like trophies on the website – many of whom were also being sexually abused by members of the defendant's organization. His actions evince neither a respect for the law nor any acknowledgment of the serious impact to victims of child sexual abuse and child pornography. A lengthy prison sentence would accordingly provide just punishment for the offense.

*3. To afford adequate deterrence to criminal conduct*.

With respect to adequate deterrence to criminal conduct, there are two points to emphasize. First, the defendant does not express any remorse for his crimes. Not only is he unrepentant, but he has expressed a desire to continue to prey on vulnerable children. Based on his statement to his own retained expert as well as his postings and message to co-conspirators, he claims that there is nothing wrong with adults having sexual contact with minors and that he wants laws designed to protect children from abuse to be changed. Second, the defendant is a serial predator who targets minor children for his own sexual pleasure. The most effective deterrence to this type of criminal conduct is lengthy imprisonment.

*4. To protect the public from further crimes of the defendant and the policy statement of the United States Sentencing Commission*.

In December 2012, the United States Sentencing Commission published a comprehensive report examining federal sentencing policy in child pornography cases. Federal Child Pornography Offenses, Report to Congress. United States Sentencing Commission (2012), available online at: http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf. In its report, the Sentencing Commission detailed the significant risk offenders involved in organized communities, such as the one Gmoser helped to administer, pose to the community, finding:

> offenders' participation in Internet "communities" in which members promote and share child pornography validates the sexual exploitation of children and may lead to the production of new child pornography images (and the consequent sexual abuse of children) by other community members.

*Id.* at 312-13.

The Sentencing Commission heard testimony from Professor Brian Levine, Ph.D., Department of Computer Science, University of Massachusetts, Amherst. Dr. Levine addressed the question of how Congress, sentencing judges, and federal sentencing guidelines can "appropriately distinguish between less and more serious offenders." Dr. Levine noted that offenders can be distinguished, in part, "by their online actions and the technology they use to access and share images of child exploitation on the Internet." Dr. Levine testified that the value that offenders contribute to the online community can be determined by the following factors: (1) the number of peers

involved; (2) the amount of content shared; (3) the amount of time devoted to the community; and (4) the resources, or bandwidth, contributed to meet the demands for the content, and that "[u]sers that have contributed a great deal of value to a community in these terms are more serious offenders, or can be viewed as more serious offenders." *Id.* Appx D-3.

Gmoser, by his participation and administration of this vast on-line community dedicated to advertising, distributing and producing child pornography, is a more serious and dangerous offender. His peers include not only over 29,000 members worldwide but also the small handful of colleagues with whom he managed and administered that community. The amount of activity on that website was staggering – the Website boasted over 300,000 posts. The criminal conduct was persistent – members are required to post new and unique material, every 30 days; and voluminous -- each upload must contain a minimum number of megabytes. Clearly committed to this venture, Gmoser himself made over 2,000 posts to the Website as of July 2014. Finally, Gmoser advised other members about tools and tactics to avoid law enforcement detection – in particular, virtual machines and encryption – tactics which he himself deployed in order to advance the goals of the conspiracy and avoid getting caught. All of these factors increase the risk of danger Gmoser poses, as a high-ranking member of this "hidden" on-line community.

In addition, this Court is obligated to look at additional facts and circumstances to fashion a sentence that more appropriately addresses this particular defendant. The

United States submits that the history of defendant's manipulation of vulnerable children is ample justification for a life sentence here. Gmoser used and coerced multiple minors for the purpose producing sexually explicit images, enticing these minors with monetary gifts. A sentence of life imprisonment is the only reasonable way of protecting the public from further crimes of such as child predator.

*5. To provide the defendant with needed educational or vocational training, medical care, or other corrective treatment.*

The defendant will receive medical, corrective treatment and sex offender treatment through the Bureau of Prisons.

*6. The kinds of sentences available.*

Under the sentencing guidelines range noted in the PSR, the defendant is in "Zone D" which requires the minimum sentence to be served as a term of imprisonment.

7. *The need to avoid unwarranted sentencing disparities among defendants found guilty of similar conduct.*

The recommended Guidelines sentence of life imprisonment is not an unreasonable sentence, and certainly would not be anomalous with Child Exploitation Enterprise convictions elsewhere. In fact, in a similar series of cases involving members of an organized, online bulletin board dedicated to the advertisement of child pornography that was prosecuted in the Western District of Louisiana, four defendants were sentenced to life sentences and numerous others to sentences of 40 years or more

following convictions for engaging in a child exploitation enterprise. *See e.g. United States v. Wyss*, 542 F. App'x 401, 402 (5th Cir. 2013) (affirming sentence of life imprisonment following jury trial conviction for engaging in a child exploitation enterprise); *United States v. Cuff*, 538 F. App'x 411, 412 (5th Cir. 2013) (affirming conviction resulting from guilty plea to engaging in a child exploitation enterprise where defendant received sentence of life imprisonment); *United States v. Sprague*, No. 10-319 (W.D. La.)(sentence of life imprisonment imposed following plea to engaging in a child exploitation enterprise); *United States v. Maweu*, No. 10-319 (W.D. La.)(same); *United States v. Ettlinger*, No. 11-062 (W.D. La.) (540 months imprisonment); *United States v. Oedewaldt*, No. 10-319 (W.D. La.) (456 months imprisonment); *United States v. Schmidt*, No. 11-062 (W.D. La.) (444 months imprisonment); *United States v. Chandler*, No. 11-cr-62 (W.D. La.) (420 months imprisonment); *United States v. Whitten*, No. 11-cr-62 (W.D. La.) (same).

* * *

## IV. CONCLUSION

Therefore, the United States urges this Court to adopt the Guidelines as calculated and sentence Defendant to life imprisonment. Such a sentence would be procedurally reasonable as calculated under § 5G1.2(d), and substantively reasonable based upon all of the pertinent sentencing factors.

Respectfully submitted,

JAMES A. LEWIS
UNITED STATES ATTORNEY

*s/Elly M. Peirson*
Elly M. Peirson, IL Bar No. 6298075
Trial Attorney, Child Exploitation and Obscenity Section
Department of Justice, Criminal Division
1400 New York Ave. NW, 6th Floor
Washington, DC 20530
Telephone: (202) 616.5714
elly.peirson2@usdoj.gov

*s/Keith A. Becker*
Keith A. Becker, NY Bar No. 4287967
Acting Assistant Deputy Chief,
Child Exploitation and Obscenity Section
Department of Justice, Criminal Division
1400 New York Ave. NW, 6th Floor
Washington, DC 20530
Telephone: (202) 305-4104
keith.becker@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*s/Elly M. Peirson*
Elly M. Peirson, IL Bar No. 6298075
Trial Attorney, Child Exploitation and Obscenity Section
Department of Justice, Criminal Division
1400 New York Ave. NW, 6th Floor
Washington, DC 20530
Telephone: (202) 616.5714
elly.peirson2@usdoj.gov