E-FILED
Monday, 17 August, 2020  04:34:33 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cr-20048-JES |
| | ) | |
| JASON T. GMOSER, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER AND OPINION

This matter is now before the Court on Defendant's Motion (Doc. 309) for New Trial and Defendant's Supplemental Motion (Doc. 318) for New Trial, the United States' Response (Doc. 320) thereto, Defendant's Reply (Doc. 330), Defendant's (Second) Supplemental Motion (Doc. 336) for New Trial, and the United States' Response (Doc. 340). For the reasons set forth below, Defendant's Motions (Docs. 309, 318, 336) are DENIED.

## BACKGROUND

### 1. *United States v. Gmoser*

Following a week-long jury trial in 2016, Jason Gmoser was found guilty of engaging in a child-exploitation enterprise, in violation of 18 U.S.C. § 2252A(g) (Count 1), conspiring to advertise child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A) (Count 2), and conspiring to distribute child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count 3). *See* Doc. 188 (jury verdicts). At trial, the United States was represented by Assistant United States Attorney ("AUSA") Elly Peirson and Department of Justice Trial Attorney Keith Becker. Attorney Bradley Kraemer represented Gmoser throughout trial and in these post-trial proceedings. District Judge Colin Bruce presided over the trial.

The evidence presented at trial proved Gmoser was one of a few leaders in an international conspiracy to advertise and distribute child pornography through the use of an online bulletin board accessible through the dark web. Gmoser, in his role as an administrator of the bulletin board, enforced the rules of the board, reprimanded members for rule violations, promoted members, rewarded frequent uploaders with access to more child pornography, and recruited new child pornography producers. Doc. 216, at ¶¶ 17–39 (Presentence Report).

As part of Gmoser's trial strategy, counsel noticed an insanity defense. Doc. 67. The United States moved to exclude the insanity defense, but the Court denied the motion. Docs. 110, 129. Gmoser presented evidence in support of his insanity defense at trial, but the jury returned convictions on all charges. Prior to sentencing, the United States asked the Court to vacate Gmoser's convictions for conspiracy to advertise and conspiracy to distribute child pornography, requesting the Court only sentence Gmoser on the enterprise charge. Doc. 218. Judge Bruce declined to do so and sentenced Gmoser on all charges. Gmoser received a sentence of life imprisonment on Count 1, 30 years on Count 2, and 20 years on Count 3, all to run concurrently. Doc. 220.

Gmoser timely appealed. Doc. 223. On appeal, Gmoser's appellate counsel submitted a request for extension of time to file his appellate brief, wherein he asserted

> the sole non frivolous issue counsel was able to raise in Defendant-Appellant's brief is whether conspiring to advertise child pornography in violation of 18 U.S.C. [§] 2251(d)(1)(A) and (e) and conspiring to distribute child pornography in violation of 18 U.S.C. [§] 2252(a)(2) are lesser included offenses of engaging in child exploitation enterprise 18 U.S.C. [§] 2252A(g)(2).

*United States v. Gmoser*, No. 16-3054, Doc. 27, at 2 (7th Cir.). Thereafter, Gmoser and the United States submitted a joint motion for summary reversal and remand, wherein the parties agreed the conspiracy offenses were lesser included offenses of the enterprise charge. *Id.* at App.

2

Doc. 32. The Seventh Circuit subsequently granted the joint motion, reversed the judgment, and remanded the case to the district court. *Id*. After considering the parties' positions, Judge Bruce vacated the convictions on the lesser offenses and set the matter for sentencing on the enterprise charge. Following the Seventh Circuit's reversal and remand, the case was reassigned from Judge Bruce to the undersigned. The Court allowed supplemental briefing on Defendant's motions for new trial. Defendant's sentencing hearing is currently scheduled for September 30, 2020.

**2. The United States' Disclosure of Judge Bruce's Ex Parte Communications**

*a. Ex Parte Communications Regarding Gmoser*

On February 1, 2016, shortly before Gmoser's trial was to begin, AUSA Peirson sent an email to Judge Bruce's chambers email, chambers' staff, defense counsel, and Peirson's co-counsel. Therein, Peirson directed Judge Bruce to trial documents previously filed on the docket by the United States. Her email concluded by apologizing to Judge Bruce "for any confusion." Doc. 309-1, at 3. Peirson's email was in response to Judge Bruce's confusion at the final pretrial conference held earlier that day, where Judge Bruce questioned whether the United States had filed all the trial documents required under his standing order.[1] Peirson's email provided citations to the document numbers and identified the relevant documents for Judge Bruce. In an email addressed to AUSA Peirson only, Judge Bruce replied, "My bad. You're doing fine. Let's get this thing done." Doc. 309-1, at 3. AUSA Peirson forwarded the court's email to her co-counsel, Trial Attorney Keith Becker. However, neither government attorney forwarded a copy to defense counsel. Judge Bruce's reply email was not disclosed to defense counsel until

---

[1] Judge Bruce's confusion was likely caused by the fact the United States filed the required documents much earlier—in November of 2015—prior to a pretrial conference where the United States requested a continuance in order to ensure the availability of a witness. The transcript of that conference reveals Judge Bruce's frustration with the United States for requesting the continuance. *See* Doc. 313, at 16–17.

September 19, 2018, after the United States Attorney's Office had completed its search for potential ex parte communications with Judge Bruce. *See* Doc. 320, at 8.

b. *Ex Parte Communications in Other Cases*

For the purposes of this Opinion, the Court assumes the reader's familiarity with the facts surrounding Judge Bruce's ex parte communications with the United States Attorney's Office for the Central District of Illinois ("the Office" or "USAO"). These facts have been comprehensively discussed and analyzed by the Seventh Circuit Judicial Council and the Seventh Circuit Court of Appeals, and are thus recounted here only in a summary fashion. *See In re Complaints Against Dist. Judge Colin S. Bruce*, Nos. 07-18-90053, 07-18-90067 (7th Cir. Jud. Council May 14, 2019) (available at http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf); *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020); *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2019).

Judge Bruce worked as a prosecutor for the USAO for 24 years prior to his appointment to the district court, and maintained friendships he established at the USAO while on the bench. In August of 2018, the *Illinois Times* reported Judge Bruce had engaged in ex parte communications with employees of the Office while he presided over the criminal trial of *United States v. Sarah Nixon*. The ex parte email communications included Judge Bruce's criticism one of the *Nixon* prosecutors as being "entirely unexperienced" and turning a "slam-dunk" case into a "60-40" one for the defendant. Following the revelation of Judge Bruce's ex parte communications with the USAO, the undersigned, in my capacity at the time as Chief District Judge, removed Judge Bruce from all cases involving the Office. *See Williams*, 949 F.3d at 1059.

The Judicial Council of the Seventh Circuit appointed a Special Committee to review the judicial misconduct complaints filed against Judge Bruce based on his ex parte communications

with the Office. The Special Committee requested and reviewed documents, conducted interviews, and held a hearing at which Judge Bruce testified. Gmoser's attorney was not involved in these proceedings. In response to the Special Committee's document request, the Office conducted a review to determine whether other ex parte communications existed. It subsequently disclosed to the Special Committee approximately 1,230 communications between Judge Bruce and members of the Office.[2] The Special Committee determined that, although many of them appeared to be innocuous, approximately 100 of these communications constituted potential ex parte communications about cases pending before Judge Bruce. Some of them concerned warrant approvals, successful appeals in one of Judge Bruce's cases, scheduling matters, or a defendant's conduct on bond, often with USAO paralegal Staci Klayer. In others, Judge Bruce addressed former colleagues, including Klayer, by nicknames and congratulated them on favorable outcomes. And in some communications, Judge Bruce reassured former colleagues after confusion regarding filings; in another, he suggested that Klayer call the First Assistant "and advise" while noting that luckily "they have an understanding judge who doesn't get angry." *Id.*

The Judicial Council adopted the Special Committee's findings and recommendations. Among those findings and recommendations was Committee's conclusion that it found "no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." Further, with the exception of the *Nixon*-related and appeal-related emails, the Special Committee saw "no evidence of Judge Bruce discussing the merits of pending cases with the Office ex parte." *Id.* at 1060. The Judicial

---

[2] In addition to the ex parte emails disclosed by the Office, this Court has previously ruled that other communications between USAO employees and communications between the USAO and other executive agencies are relevant to the issue of whether Judge Bruce displayed actual bias or the appearance of bias. *See United States v. Nixon*, No. 15-cr-20057, 2020 WL 616164 (C.D. Ill. Feb. 10, 2020).

Council publicly reprimanded Judge Bruce and kept him unassigned from any cases involving the Office until September 1, 2019. *Id*.

**3. Defendant's Rule 33 Motions**

On October 2, 2018, Gmoser filed his first Motion for New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Doc. 309. Therein, Gmoser asserted newly discovered evidence of Judge Bruce's ex parte communications with the USAO established Judge Bruce's conduct created "the appearance of impropriety" and "an appearance of bias against the Defense[.]" *Id*. at 2.

On December 28, 2018, Defendant supplemented his Motion for New Trial. Doc. 318. Therein, Defendant alleged Judge Bruce's conduct violated Defendant's due process right to a trial before an impartial judge. *Id*. at 2. Based on his review of the voluminous ex parte communications, Defendant argued "Judge Bruce still maintains close contact with the U.S. Attorney's Office and the tone of the various emails presents an atmosphere as if they are still on the same team." "It is clear from emails that Judge Bruce still feels as if he and the U.S. Attorney's Office are working together in the prosecution of these cases." *Id*. Moreover, with respect to the single email communication relating to Gmoser's case, Defendant argues that, when viewed together with Judge Bruce's history as a career prosecutor and the other ex parte communications, the exchange shows Judge Bruce was working with the Office to ensure Gmoser's conviction. *Id*. at 3–4.

On January 31, 2019, the United States responded to Defendant's motions. Doc. 320. The United States first discusses which legal standard applies to Defendant's claims, which the Court will address later in its discussion. Second, the United States concedes "the February 1 reply email, as well as other communications involving Judge Bruce and members of the U.S.

Attorney's Office on which the defendant relies in support of his claim of judicial bias, constitutes evidence that the defense discovered after trial and that the defense could not have discovered sooner through the exercise of due diligence." *Id*. at 13. Therefore, the United States suggests, "the sole question that this Court must answer is whether Judge Bruce had a disqualifying bias." *Id*. The United States proceeds to argue that the February 1, 2016 reply email to AUSA Peirson does not reflect actual bias or an appearance of bias justifying the grant of a new trial. *Id*. at 15. Rather, the United States argues that, when the email is viewed in the appropriate context, it shows Judge Bruce's response was the result of his prior misplaced frustration that the United States did not file the required documents. After learning he was mistaken and the AUSA did in fact file the required documents earlier, Judge Bruce responded "My Bad. You're doing fine. Let's get this thing done." The United States thus argues the reasonable inference to be drawn from this communication is that Judge Bruce was admitting his mistake and apologizing to counsel for suggesting she made a mistake. *Id*. at 15–19.

   With respect to the ex parte communications not relating to Gmoser's case, the United States analyzes those communications in detail, ultimately concluding they do not reflect actual bias or a possible temptation so severe as to overcome the presumption that Judge Bruce rose above any biasing influences. *Id*. at 21 (citing *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005)). Specific to the *Nixon* emails, the United States argues Judge Bruce's opinions on Nixon's testimony stemmed from his observations during the course of the proceedings,[3] and thus do not constitute a basis for a bias or partiality claim absent some indication of "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. at 22 (quoting *Liteky v.*

---

[3] The United States does not contend the ex parte nature of the *Nixon* emails was appropriate. *See* Doc. 320, at 23 ("Unfortunately, Judge Bruce incautiously expressed his views to a prior colleague in the U.S. Attorney's Office who was not part of the prosecution team.").

7

*United States*, 510 U.S. 540, 555 (1994)). The United States submits Judge Bruce's stated opinions of Nixon's testimony did not rise to the level of disqualifying bias. *Id*. at 23.

On February 27, 2019, Defendant filed his Reply. Doc. 330. In addition to his prior due process arguments, Defendant argued "[t]here were several evidentiary rulings in this case that affected the outcome and all were made in favor of the prosecution." *Id*. at 4. However, Defendant does not attempt to identify any specific ruling he believed was incorrect. Additionally, Defendant addresses the United States' reliance on *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016) for the proposition that the test for appearance of partiality is "whether an objective, disinterested observer fully informed of the reasons that recusal was sought would entertain a significant doubt that justice would be done in the case." Here, Defendant argues an objective observer with knowledge of Judge Bruce's relationship with the USAO and his ex parte comments to members of the Office would have serious doubts about Judge Bruce's ability to detach himself from his former role as prosecutor. Finally, Defendant argues "[a]t a minimum, if counsel had been aware of the symbiotic relationship [between Judge Bruce and the Office], counsel would have requested that the Judge recuse himself." *Id*. at 6.

While Defendant's motions remained pending, the Seventh Circuit addressed two cases bearing on Judge Bruce's ex parte communications. *See United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020), *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2019). Given the significance of these decisions and their relationship to this case, the Court requested further briefing from the parties on the impact of those decisions. Accordingly, on June 1, 2020, Defendant filed his second Supplemental Motion for New Trial. Doc. 336.

In his second supplement, Defendant relies on both the Due Process Clause and the judicial recusal statute, and argues he is entitled to a new trial under *Williams* and *Atwood*

8

because "misconduct occurred during his trial and there were several discretionary decisions that were made against Mr. Gmoser." *Id*. at 4. Defendant distinguishes his case from *Williams*, arguing that unlike the defendant in *Williams*, Judge Bruce's ex parte communications with the Office related directly to Gmoser's own case. *Id*. at 4–6. Additionally, Defendant analyses the *Liljeberg* factors and argues that (a) even after the measures employed by the Judicial Council to address Judge Bruce's misconduct, Judge Bruce was recently reported to have made inappropriate campaign contributions to a senator involved in his appointment to the federal bench; (b) unlike the hardship for victim witnesses in *Williams*, a retrial of Gmoser' case would only require the presence of expert and law enforcement witnesses; and (c) Judge Bruce's various pretrial rulings prejudiced Defendant. *Id*. at 6–10.

On June 22, 2020, the United States filed its Response. Doc. 340. Therein, the United States reiterates its positions, arguing (a) the Special Committee's report and the Judicial Council's order foreclose any finding of actual bias; (b) the Seventh Circuit decision in *United States v. Williams* and other precedent compel denying Gmoser's motion for new trial; and (c) nothing in the additional documents produced by the United States requires a new trial. *Id*. at 17–30.

## LEGAL STANDARD

"[T]he Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotations and citations omitted). "Where the judge has a direct, personal, substantial, or pecuniary interest, due process is violated." *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005). However, "[t]he general presumption is that judges are honest, upright individuals and thus that they rise above biasing influences." *Franklin*,

398 F.3d at 959. That presumption may be rebutted by showing, for example, that the temptation to be biased is so strong "we may presume actual bias." *Id*. at 959–60 (quoting *Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1375 (7th Cir. 1994) (en banc)). The presumption may also be rebutted in rare cases where litigants produce evidence of actual bias. *Id*. at 960 (citing *Bracy v. Gramley*, 520 U.S. 899, 905 (1997)). Thus, to prove disqualifying bias, "a petitioner must offer either direct evidence or 'a possible temptation so severe that we might presume an actual, substantial incentive to be biased.' " *Id*. (citing *Del Vecchio,* 31 F.3d at 1380). "Absent a 'smoking gun,' a petitioner may rely on circumstantial evidence to prove the necessary bias." *Id*. (citing *Bracy v. Schomig*, 286 F.3d 406, 411–12 (7th Cir. 2002)).

In evaluating bias claims under this framework, courts ask "whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.' " *Williams*, 949 F.3d at 1061 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009), *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017)). Although this standard does not require proof of actual bias, "bad appearances," standing alone, do not meet this threshold. *Del Vecchio*, 31 F.3d at 1371 ("If the question truly is whether a defendant received a fair trial, bad appearances alone should not require disqualification to prevent an unfair trial. What may appear bad to an observer, especially in hindsight, may not have influenced—or, more importantly, may not have had any real possibility to influence—the judge in his decision-making process."); *see also Suh v. Pierce*, 630 F.3d 685, 691 (7th Cir. 2011).

Applying this standard, courts have identified four circumstances where it has been met. First, a judge who is actually biased against a defendant violates the defendant's due process rights. *See Franklin*, 398 F.3d at 961 (finding that the judge's writings demonstrated he decided the issue of the defendant's guilt long before trial). Second, a judge who earlier had "significant,

personal involvement as a prosecutor in a critical decision regarding the defendant's case" violates the Due Process Clause when he presides over the defendant's trial. *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (stating such circumstance creates "an impermissible risk of actual bias"). Third, a judge's financial interest in the outcome of a case is disqualifying. *In re Murchison*, 349 U.S. 133, 136 (1955) ("[N]o man is permitted to try cases where he has an interest in the outcome."); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824 (1986) (state court justice's involvement in civil suits against insurer while deciding appeal was a 'direct, personal, substantial, and pecuniary" interest requiring disqualification). Fourth, a judge must disqualify himself when he becomes "personally embroiled" with a litigant. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971).

In addition to the Due Process Clause, federal judges must abide by the federal recusal statute. 28 U.S.C. § 455. Under § 455(a), a judge must recuse himself from "any proceeding in which his impartiality might reasonably be questioned." *Id.*; *United States v. Atwood*, 941 F.3d 883, 885 (7th Cir. 2019). A judge's violation of § 455(a) is reviewed under the harmless error standard as articulated in *Liljeberg v. Health Acquisition Corp.*, 486 U.S. 847, 864 (1988). In assessing whether a § 455(a) violation is harmless, courts consider: (1) the risk of injustice to the parties in the particular case, (2) the risk that the denial of relief will produce injustice in other cases, and (3) the risk of undermining the public's confidence in the judicial process. *Liljeberg*, 486 U.S. at 864; *Atwood*, 941 F.3d at 885.

### DISCUSSION

The resolution of Defendant Gmoser's requests for a new trial hinges largely on the application of three Seventh Circuit decisions to this case. Therefore, a discussion of those cases is in order.

**1.** *United States v. Atwood*

The first Seventh Circuit decision dealing with Judge Bruce's improper ex parte communications is *United States v. Atwood*. In that case, the defendant pleaded guilty to three controlled substance offenses. A presentence report was prepared wherein Atwood's guideline sentencing range was calculated to be 188 to 235 months of imprisonment. Judge Bruce sentenced Atwood to a total of 210 months' imprisonment, which he based on the 18 U.S.C. § 3553(a) factors. While his appeal was pending, Judge Bruce's ex parte communications were disclosed, and Atwood raised in his appeal the issue of whether Judge Bruce violated the federal recusal statute. *Atwood*, 941 F.3d at 884–85.

The Seventh Circuit addressed Atwood's recusal argument by analyzing the *Liljeberg* factors. As to the first factor—the risk of injustice to the parties in the case—the Seventh Circuit stated:

> We begin with the potential unfairness to Atwood of upholding his sentence. Judge Bruce calculated Atwood's sentence based on the factors outlined in 18 U.S.C. § 3553(a). As we have said before, "[t]he open-endedness of the § 3553(a) factors leaves ample room for the court's discretion." *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015). That discretion invites the risk that a judge's personal biases will influence or appear to influence the sentence he imposes. *See United States v. Smith*, 775 F.3d 879, 882 (7th Cir. 2015) (remanding for resentencing because of the possibility that a judge's prior knowledge of a case was a conscious or unconscious influence on the sentence she imposed). Upholding Atwood's sentence, then, creates a real risk of unfairness to him.
>
> Conversely, there is little risk of unfairness to the government if we remand Atwood's case for resentencing. Although a second sentencing proceeding carries some administrative cost, the government concedes that resentencing would not impose a special hardship in this case. *Cf. Rosales-Mireles v. United States*, —— U.S. ——, 138 S. Ct. 1897, 1909, 201 L.Ed.2d 376 (2018) (characterizing a resentencing proceeding as "relatively inexpensive"). Since there is a substantial risk of unfairness to Atwood if we uphold his sentence and little risk of unfairness to the government if we do not, the first *Liljeberg* factor favors resentencing.

*Atwood*, 941 F.3d at 885. Addressing the second *Liljeberg* factor—the risk of injustice to parties in future cases—the Seventh Circuit noted, "[a]s in *Liljeberg*, we think that enforcing § 455(a) in this case 'may prevent a substantive injustice in some future case'—here, by encouraging judges to exercise caution in their communications. 486 U.S. at 868, 108 S.Ct. 2194. This factor also counsels in favor of resentencing." *Id*. And with respect to the third factor—the risk of undermining public confidence in the judicial process—the court reasoned:

> In sentencing, the most significant restriction on a judge's ample discretion is the judge's own sense of equity and good judgment. When those qualities appear to be compromised, the public has little reason to trust the integrity of the resulting sentence. The government has conceded that Judge Bruce compromised his appearance of impartiality. Allowing Atwood's sentence to stand would undermine the public's confidence in the fairness of this sentence and in the impartiality of the judiciary. All three *Liljeberg* factors, then, counsel that we remand for resentencing.

*Id*. at 886.

### 2. *United States v. Williams*

The Seventh Circuit also addressed Judge Bruce's ex parte communications in *Williams*. There, the defendant was charged with obstruction of commerce by robbery. Williams pleaded not guilty and proceeded to a jury trial before Judge Bruce. The jury found Williams guilty. After the verdict but prior to sentencing, Judge Bruce's ex parte communications were disclosed, and Williams's case was reassigned to Judge Darrow, who sentenced him to 180 months in the Bureau of Prisons. On appeal, Williams argued Judge Bruce's ex parte communications violated his due process rights and the federal recusal statute. *Williams*, 949 F.3d at 1058–59. The court first addressed Williams's due process argument. *Id*. at 1061. After identifying the four

circumstances where courts have found an unconstitutional potential for bias,[4] the Seventh

Circuit observed that Williams's case "does not fit into these buckets." *Id*. at 1061. Rather,

> Williams has not provided any evidence of actual bias. To the contrary, the Special Committee found "no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." It is undisputed that none of the ex parte communications concerned Williams's case. Nor is there any evidence that Judge Bruce had a pecuniary interest in the outcome, previously worked on the case as a prosecutor, or became "personally embroiled" with the parties.

*Id*. at 1061–62.

The court also rejected Williams's argument that an exchange[5] between Judge Bruce and

the prosecutor in his case showed Judge Bruce's personal bias in favor of the government,

reasoning there was nothing improper about the on the exchange, which occurred before both

parties, on the record, in open court, and outside the presence of the jury. *Id*. at 1062.

Additionally, the court rejected Williams's claim that Judge Bruce's preexisting relationship with

members of the Office, standing alone, violated Williams's due process rights, noting Williams

had presented no evidence to overcome the presumption that judges rise above biasing

influences. *Id*. (citing *Del Vecchio*, 31 F.3d at 1372). Accordingly, the Seventh Circuit found

Judge Bruce did not violate Williams's due process rights by presiding over his trial. *Id*. at 1063.

Next, the court analyzed whether Judge Bruce's failure to recuse was harmless error. The

court began its discussion by noting the federal recusal statute provides greater protections than

due process requires, and further pointing out the United States' concession that Judge Bruce

violated § 455(a) (i.e., a reasonable person might question Judge Bruce's impartiality based on

his communications with the Office). *Id*. Thus, the court proceeded to analyze the *Liljeberg*

---

[4] *See* Legal Standard, *supra*, at 9–11 (reciting four circumstances where courts have found due process violation for failure to recuse).
[5] The essence of the conversation involved the prosecutor stating she was not trying to be "sneaky" and Judge Bruce responding by stating he did not think the prosecutor to be "sneaky." 949 F.3d at 1062.

factors for harmless error. As to the first factor—the risk of injustice to the parties in the case—

the Seventh Circuit reasoned:

> The first *Liljeberg* factor requires us to consider the risk of injustice to the parties in this particular case. We begin with the risk to Williams. The totality of the facts suggests that there is little risk of unfairness in upholding Williams's conviction. First and significantly, while some ex parte communications included Peirson or Klayer, it is undisputed that none of these communications concerned Williams's case. There is also no evidence that either Peirson or Klayer had any influence on the outcome here. Second, although Judge Bruce presided over Williams's trial, he was not the trier of fact making the ultimate determination of whether the government had proved Williams guilty beyond a reasonable doubt. A jury found Williams guilty, and Williams has not questioned the jury's impartiality. Third, Judge Bruce made minimal rulings before and during trial, none of which either party challenges on appeal. As to his pre-trial rulings, Judge Bruce granted routine scheduling and appearance motions for both parties. He denied the government's discovery motion as moot, but he granted the government's motion to bar an alibi defense because Williams failed to file a response or object. Judge Bruce also denied as moot Williams's motion in limine to bar the government from introducing evidence of prior convictions because the government represented that it did not intend to introduce such evidence in its case in chief. The court specifically noted in its order that "should circumstances change at trial, and the government attempt to introduce such evidence during its case in chief, Defendant may revive his motion." Williams has not argued that any of these rulings prejudiced him. Indeed, the rulings were not controversial or contested and generally pertained to routine matters.
>
> As to his trial rulings, Judge Bruce equally granted and denied objections from both parties. Judge Bruce sustained eight out of eighteen of defendant's objections and two out of four of the government's objections. He also denied Williams's Rule 29(a) motion at the close of the government's case and his renewed Rule 29 motion at the close of all evidence. None of these rulings suggest that Judge Bruce's appearance of bias had any impact on the outcome of Williams's trial. Nor does Williams argue that any particular ruling was prejudicial.
>
> Williams attempts to rebut these facts by arguing that under the government's view, "the harmlessness inquiry would always require proof of actual bias, and would thus render § 455(a)'s prohibition on the appearance of bias a nullity." We disagree. The Supreme Court in *Liljeberg* cautioned that "[a]lthough § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty." *Liljeberg*, 486 U.S. at 862, 108 S.Ct. 2194. Rather it is up to each court to determine what remedy is appropriate on a case-by-case basis. Williams has the burden of showing that at least some of the *Liljeberg* factors counsel in favor of a new trial. A mere statutory violation alone does not automatically entitle him to a new trial.

Also for the first factor, we must consider the risk of injustice to the government if a new trial is granted. We agree with the government that the costs of retrial pose a significant risk of injustice to it. The government would likely spend valuable time and money to retry this case thereby diverting resources from other cases. *See United States v. Cerceda*, 172 F.3d 806, 814 (11th Cir. 1999) (en banc) (per curiam). Williams's case is distinguishable from *Atwood* in that regard. Unlike Williams, Atwood pleaded guilty and requested a resentencing by a different judge. *Atwood*, 941 F.3d at 884. "[A] remand for resentencing, while not costless, does not invoke the same difficulties as a remand for retrial does." *Rosales-Mireles v. United States*, —— U.S. ——, 138 S. Ct. 1897, 1908, 201 L.Ed.2d 376 (2018) (citing *Molina-Martinez v. United States*, —— U.S. ——, 136 S. Ct. 1338, 1348–49, 194 L.Ed.2d 444 (2016)). This factor favors denying Williams's request for a new trial.

*Williams*, 949 F.3d at 1064–65.

The Seventh Circuit next found the second *Liljeberg* factor weighed against granting a new trial:

The second *Liljeberg* factor asks us to evaluate the risk that the denial of requested relief will produce injustice in future cases. Williams argues that enforcing § 455(a) here may warn judges and litigants to more carefully consider possible grounds for disqualification before trial in other cases. The government contends that the Special Committee's Report has minimized the risk of similar, future violations. The Special Committee and the Judicial Council undertook a thorough investigation and review of the complaints against Judge Bruce, including requesting and reviewing document productions from Judge Bruce and the Office, conducting interviews, and holding a hearing at which Judge Bruce testified. The Special Committee submitted a detailed report to explain its finding and recommendations, which the Judicial Council adopted and made public. The Judicial Council subsequently issued an order publicly reprimanding Judge Bruce and ordering that he remain unassigned from any matters involving the Office until September 1, 2019. *In re Complaints Against Dist. Judge Colin S. Bruce*, Nos. 07-18-90053, 07-18-90067 (7th Cir. Jud. Council May 14, 2019). Moreover, Judge Bruce changed his practices in response to the inquiry. He adopted a policy prohibiting any email communications with counsel, prepared a standard response to any future ex parte communications initiated by litigants, and created a system that populates chambers email and his work email into separate inboxes. These changes should help reduce any future problems. In this case, we believe that this factor leans towards denying Williams's requested relief.

*Id.* at 1065. And with respect to the third *Liljeberg* factor, the court reasoned:

16

As discussed above, none of Judge Bruce's pre-trial and trial rulings suggest any actual bias. And the Special Committee did not find any evidence that "Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party" in any case. On the other hand, overturning a jury verdict based purely on the appearance of bias creates a risk that the public will lose confidence in the judicial process. *See, e.g.*, *Cerceda*, 172 F.3d at 815–16; *see also Bergeron*, 636 F.3d at 883–84; *Marcavage v. Bd. of Trs. of Temple Univ.*, 232 F. App'x 79, 84 (3d Cir. 2007). And requiring witnesses to relive this serious crime by testifying at a retrial would pose unwarranted hardship on the witnesses when all evidence suggests the original trial was fair and impartial. This final factor slightly favors upholding Williams's conviction. Because all three *Liljeberg* factors suggest that the statutory violation was harmless error, we deny Williams's request for a new trial and affirm his conviction.

*Id*. at 1066.

In addition to the Seventh Circuit's analysis of the *Liljeberg* factors, the court also

differentiated the case before it from *Atwood*. Specifically, the court reasoned:

A key difference exists between this case and *Atwood*. In *Atwood*, the defendant entered a guilty plea, and Judge Bruce presided over his sentencing hearing. Here, Williams pleaded not guilty, and a jury found him guilty. Moreover, Judge Bruce did not preside over Williams's sentencing hearing. This distinction matters because judges generally have more discretion over sentencing than the outcome of a jury trial. As we noted in *Atwood*, " '[t]he open-endedness of the § 3553(a) factors leaves ample room for the court's discretion' ... That discretion invites the risk that a judge's personal biases will influence or appear to influence the sentence he imposes." *Id*. at 885 (quoting *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015)). After applying the *Liljeberg* factors to the particular facts in this case, we conclude that the error here was harmless and does not warrant a new trial.

*Id*. at 1064.

### 3. *United States v. Orr*

The most recent decision from the Seventh Circuit involving Judge Bruce's ex parte

communications is *United States v. Orr*, which was decided after briefing in this case concluded.

*United States v. Orr*, No. 19-1938, 2020 WL 4582197, at *1 (7th Cir. Aug. 10, 2020). In *Orr*, the

defendant was found guilty of possessing a firearm as a felon following a two-day jury trial.

Although the Seventh Circuit affirmed Judge Bruce's denial or Orr's motion to suppress

evidence, the court found Judge Bruce's ex parte communications "cast a pall over certain decisions" in the case "which required the exercise of substantial discretion." *Id*. Analyzing the *Liljeberg* factors in conjunction with the opinions in *Atwood* and *Williams*, the court stated:

> Like the defendant in *Williams*, Orr appeals his conviction after a jury trial presided over by Judge Bruce. But unlike the defendant in *Williams*, Orr challenges three seemingly discretionary decisions by Judge Bruce: the denial of the motion to suppress, the admission of drug evidence under Federal Rule of Evidence 404(b), and the allowance of cross-examination questions about Orr's prior felony conviction.

*Orr*, No. 19-1938, 2020 WL 4582197, at *5. The denial of the motion to suppress "required little discretion," and thus did not support Orr's request for a new trial. However, "Orr's challenges to two of Judge Bruce's trial decisions are a different matter." *Id*. at *6. First,

> when Orr said he had no reason to own a firearm, Judge Bruce made a close discretionary call by deciding that Orr placed his motive at issue. While Orr was on the witness stand the prosecutor asked: "You didn't have any reason to possess a firearm?" Orr responded: "I haven't, I haven't touched a firearm in 25 years, sir." "[B]ased upon [Orr's] answers, ... tone[,] and manner," the district court determined Orr placed his motive at issue. Yet given this exchange, whether Orr or the prosecutor placed motive at issue is not a simple question. As Orr points out on appeal, he denied having a reason to possess a firearm *in response to* the prosecutor's questioning. Orr asserts the prosecutor placed motive at issue when he asked Orr if he had any reason for possessing a firearm. The parties dispute who opened the door to admitting the drug evidence, and this evidentiary ruling involved a substantial amount of discretion.

*Id*.

> Second, Judge Bruce made a close discretionary call when the prosecutor asked Orr if he

had been convicted of dealing drugs and if that conviction should affect his credibility. *Id*.

> The district court permitted the prosecutor's line of questioning but cautioned him not to "get into a prejudicial area" by "overplay[ing] it." Although the parties on appeal characterize the government's inquiry as potentially falling under the "motive" exception of Federal Rule of Evidence 404(b), the questioning likely occurred within the parameters of the impeachment exception contained in Federal Rule of Evidence 609. The district court issued a pre-trial order clarifying that Orr's prior conviction could not be introduced to prove motive, and the prosecutor mentioned Orr's prior conviction only in the context of impeaching him. Further,

the jury was instructed to consider Orr's prior conviction only when deciding the credibility of his testimony and whether he was a felon at the time he possessed the gun. All of these facts indicate the district court permitted the prosecutor to impeach Orr under Rule 609. But regardless of which rule the questioning occurred under, the district court exercised substantial discretion by weighing the probative value and prejudicial effect of the questioning and by allowing the questioning to proceed.

*Id.*

These two discretionary rulings distinguished *Orr* from *Williams*, the court reasoned, because

[t]he pre-trial and trial rulings in *Williams* were routine, granted in favor of both parties, uncontested on appeal, and not overly prejudicial to the defendant. *See Williams*, 949 F.3d at 1064. The two discretionary rulings in this case were non-routine, decided in favor of the government, and challenged on appeal. Notably, both rulings in this case significantly aided the prosecution. In the first, the district court permitted the prosecutor to introduce evidence that Orr stored drug-dealing paraphernalia and "several thousand dollars['] worth of drugs" in his apartment. As a result of the second, Orr was not only impeached on his felony conviction but the jury was presented with evidence that he was convicted of dealing drugs. Because this case centered on circumstantial evidence and credibility determinations, both decisions prejudiced Orr. With these discretionary decisions in mind, we turn to the *Liljeberg* factors.

*Id.* at *7.

With the above in mind, the Seventh Circuit proceeded to address the *Liljeberg* factors.

As to the first factor,

[t]he record suggests that upholding Orr's conviction would create a tangible risk of unfairness to him. Because of the discretionary calls described above, it is possible the district court's personal biases influenced the outcome in this case. *See Atwood*, 941 F.3d at 885. For the first factor, though, we must also consider the risk of injustice to the government if a new trial is granted. Retrying this case would likely require the government to "spend valuable time and money ... thereby diverting resources from other cases." *Williams*, 949 F.3d at 1065. Even so, the risk of injustice to the government is directly related to the complexity of the trial. *See United States v. Cerceda*, 172 F.3d 806, 815 (11th Cir. 1999) (en banc) (per curiam) ("[T]he government would face great hardship if forced to conduct a new trial [ ] because of the complexity of the case (a 78 count, complex white-collar prosecution the trial of which lasted two-and-a-half months)."). We conclude that the risk of injustice to the government in this matter is relatively slight due to the straightforwardness and brevity of the prosecution's case. Orr faced one charge,

and the trial lasted only two days. On these facts, the risk of injustice Orr faces if we do not vacate his conviction is greater than the risk of injustice the government faces if we upheld Orr's conviction. So the first *Liljeberg* factor favors Orr.

*Id*. On the second factor, the Seventh Circuit considered the arguments of the parties but ultimately decided that the defendant failed to explain why the *Williams* court was wrong.

> Under the second *Liljeberg* factor, we look to "the risk that the denial of relief will produce injustice in other cases." *Liljeberg*, 486 U.S. at 864, 108 S.Ct. 2194. The parties in this case raise the same arguments as in *Williams*. 949 F.3d at 1065. The government contends no further action is necessary to induce other judges to exercise caution in their communications because Judge Bruce was thoroughly investigated, those results were adopted by the Judicial Council, he was publicly reprimanded, and he has implemented new practices to prevent similar issues in the future. Orr, on the other hand, argues these facts are not enough to ensure judges exercise more caution in the future and that further action must be taken. In *Williams*, we balanced these arguments and decided that the second *Liljeberg* factor counsels against awarding relief. 949 F.3d at 1065. *But see Atwood*, 941 F.3d at 885 (finding the second *Liljeberg* factor counsels in favor of resentencing). Because no reason is provided as to why the *Williams* decision was erroneous on this point, we conclude this factor favors upholding Orr's conviction.

*Id*. Finally, the Seventh Circuit found the third factor weighted in favor of a new trial.

> Like the defendant in *Williams*, Orr was found guilty by a jury of his peers. Although in *Williams* we decided that the jury finding the defendant guilty was "significant," we envisioned "a case where a judge has substantial discretion and his rulings have a significant impact on the outcome, thus undermining the public confidence in the judicial process." 949 F.3d at 1065. Such a case is now before us. Judge Bruce exercised substantial discretion by admitting evidence of Orr's drug dealing and by permitting the prosecutor to cross-examine Orr on his felony conviction for dealing drugs. These evidentiary decisions were particularly consequential because they bolstered the prosecution's case, which rested on circumstantial evidence and credibility calls. Given these discretionary rulings, upholding Orr's conviction may damage the public's confidence in the impartiality of the judiciary. For these reasons, the final *Liljeberg* factor favors vacating Orr's conviction.

*Id*. Because two of the *Liljeberg* factors favored vacating Orr's conviction, the Seventh Circuit concluded Judge Bruce's failure to recuse was not harmless error, and thus vacated his conviction and remanded for a new trial before a different judge. *Id*. at *8.

20

**4. Application of *Atwood*, *Williams*, and *Orr* to Gmoser's Case**

*a. Due Process*

As previously stated, in order for Gmoser to prevail on his due process claim, he must rebut the presumption that judges rise above biasing influences. *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005). To do so, he must either produce evidence of actual bias, *Bracy v. Gramley*, 520 U.S. 899, 905 (1997), or a possible temptation so severe that an actual, substantial incentive to be biased may be presumed, *Franklin*, 398 F.3d at 959. When evaluating claims under this framework, courts ask "whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.' " *Williams*, 949 F.3d at 1061.

Here, the only evidence Gmoser produces to support a finding of actual bias in his case is Judge Bruce's ex parte reply email to AUSA Peirson, where he stated "My bad. You're doing fine. Let's get this thing done." Doc. 309-1, at 3. However, aside from the ex parte nature of this communication, there is nothing improper about Judge Bruce's comments. Rather, when this communication is viewed in the proper context, it indicates Judge Bruce acknowledging his mistake when he suggested the United Sates failed to file documents on time. This apology followed a pretrial conference where Judge Bruce scolded the prosecution for not being ready for trial. *See* Doc. 313, at 16–17. Thus, while the ex parte nature of this communication was improper, the substance of the email was not. Like the exchange at issue in *Williams*, Judge Bruce's email does not support a finding of actual bias against Gmoser. *Cf. Williams*, 949 F.3d at 1062. Additionally, the Seventh Circuit appeared to rely upon the Special Committee's report in both *Atwood* and *Williams*, which found "no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Williams*, 949 F.3d at 1061–62, *Atwood*, 941 F.3d at 885. Moreover, like in *Williams*,

Defendant has not produced any evidence to suggest Judge Bruce had a pecuniary interest in the outcome of Gmoser's case, previously worked on the case as a prosecutor, or became personally embroiled with the parties. *Williams*, 949 F.3d at 1062.

Gmoser also argues Judge Bruce's pretrial rulings evidence his bias against the defense. Doc. 336, at 6–10. First, he argues Judge Bruce impacted his trial by denying his motion in limine to exclude evidence regarding Gmoser's statement to law enforcement concerning his conduct with an underage child. Doc. 336, at 8. Second, Gmoser insists that although Judge Bruce denied the United States' motion in limine to exclude Defendant's expert for his insanity defense, he "set the tone for how Dr. Bassman's testimony would be treated during the trial as he worked to narrow the scope of the doctor's testimony." *Id*. Third, Gmoser points to the United States' use of an expert on rebuttal, arguing Judge Bruce allowed him to testify as to a diagnosis despite having never met with or examined Gmoser. *Id*. at 9. Lastly, Gmoser points to Judge Bruce's decision on remand to sentence Gmoser on the more serious count rather than the two lesser charges. *Id*.

The United States argues the record in this case demonstrates Judge Bruce ruled on motions in an even-handed manner. Doc. 320, at 16.[6] Additionally, the United States points to Gmoser's appellate counsel, who argued before the Seventh Circuit that

> the sole non frivolous issue counsel was able to raise in Defendant-Appellant's brief is whether conspiring to advertise child pornography in violation of 18 U.S.C. [§] 2251(d)(1)(A) and (e) and conspiring to distribute child pornography in violation of 18 U.S.C. [§] 2252(a)(2) are lesser included offenses of engaging in child exploitation enterprise 18 U.S.C. [§] 2252A(g)(2).

---

[6] Gmoser did not include specific rulings from Judge Bruce to support his motion until his last supplement. Doc. 336. The United States' Response to that supplement fails to grapple with the alleged errors Gmoser identified therein. Doc. 340. However, in a prior response, the United States did anticipate and address some arguments regarding trial rulings that it thought Gmoser might make. Doc. 320, at 16.

*United States v. Gmoser*, No. 16-3054, Doc. 27, at 2 (7th Cir.). Thus, the United States argues that, although Gmoser now raises four claimed errors by Judge Bruce in his motions for new trial, he fails to explain why those purported errors were not considered or identified by appellate counsel.

In reviewing Gmoser's four claims of error by Judge Bruce, the Court notes Defendant largely fails to explain why Judge Bruce's decisions were either legally incorrect or how they support his claim of bias. With respect to Judge Bruce's denial of his motion in limine to exclude evidence regarding Gmoser's statement to law enforcement concerning his conduct with an underage child, the Court notes Judge Bruce undertook a careful analysis of the issue in his written order. Doc. 126. Without further explication from Defendant as to why this ruling supports his motion for new trial, the Court's analysis is cabined to the record before it, and that record is devoid of any inference of bias in this case.

Defendant's second claimed error fares no better. Gmoser argues that although Judge Bruce denied the United States' motion in limine to exclude Defendant's expert for his insanity defense, he "set the tone for how Dr. Bassman's testimony would be treated during the trial as he worked to narrow the scope of the doctor's testimony." Gmoser attaches relevant portions of the trial transcript in support of his argument. Doc. 336-6. However, the Court's review of the transcript yields a different conclusion. Judge Bruce allowed Gmoser's counsel broad leeway in questioning Defendant's expert and the United States' rebuttal expert. When the United States' objections were sustained, the objections were usually as to form, and Gmoser's counsel was able to ask the same question in a different manner. It appears the only substantive objection Judge Bruce sustained related to expert testimony beyond the scope of the expert's specialized knowledge. *Id*. at 7 (transcript pg. 136).

23

In his third claim of error, Gmoser argues Judge Bruce allowed the United States'
rebuttal expert to testify as to a diagnosis despite having never met with or examined Gmoser.
*See* Doc. 336-7. Again, Gmoser makes no legal argument, cites to no case law, rule or statute,
and fails to explain how this ruling supports a claim that Judge Bruce was biased against him or
appeared to be so. Additionally, the attached transcript shows Gmoser's counsel was able to raise
these concerns on cross examination.

Lastly, Gmoser argues Judge Bruce's decision on remand to sentence Gmoser on the
more serious count rather than the two lesser charges supports a finding of bias. Doc. 336, at 9.
However, he does not explain why Judge Bruce's decision was legally incorrect, nor does he
allege that Judge Bruce exercised his discretion in a manner suggestive of bias. Again, without
further explication from Defendant as to why this ruling supports his motion for new trial,
Defendant cannot rebut the presumption that Judge Bruce rose above any biasing influences in
this case. In any event, this Court's review of Judge Bruce's written decision on the matter shows
Judge Bruce carefully considered the positions of the parties and made his decision based on
Defendant's conduct and the need to hold Defendant accountable for the size and scope of his
criminal conduct. Doc. 306, at 2. This Court would likely reach a similar conclusion if
confronted with the issue. Accordingly, Defendant has failed to produce evidence of actual bias
or a possible temptation so severe that actual bias may be presumed, and for this reason his due
process claim must be denied. *Del Vecchio*, 31 F.3d at 1380.

b. Section 455

Next, the Court must consider whether Judge Bruce's violation of the federal recusal
statute was harmless. In assessing whether a § 455(a) violation is harmless, courts consider: (1)
the risk of injustice to the parties in the particular case, (2) the risk that the denial of relief will

produce injustice in other cases, and (3) the risk of undermining the public's confidence in the judicial process. *Liljeberg*, 486 U.S. at 864.

### I. THE RISK OF INJUSTICE TO THE PARTIES

In Defendant's second supplement, he argues his case is distinguishable from *Williams* because there were no ex parte communications in *Williams*, and while Judge Bruce was not the ultimate trier of fact in either case, "there were pre trial motions and a defense that relied on evidentiary rulings by the Judge which defined what experts were and were not allowed to testify to." Doc. 336, at 6. This argument fails for the reasons already discussed in the Court's analysis of Defendant's due process claim. To reiterate, while the ex parte nature of Judge Bruce's reply email to AUSA Peirson was improper, the substance of the email was not. No other ex parte communications concerned Gmoser's case. And while Defendant repackages his argument that Judge Bruce's rulings indicate bias, he again fails to explain the import of these rulings or how they prejudiced Gmoser. The Court's conclusion in this regard is further strengthened by the fact appellate counsel identified no meritorious issue on appeal other than whether Gmoser's convictions on counts 2 and 3 were lesser included offenses of count 1. *Cf. Orr*, No. 19-1938, 2020 WL 4582197, at *7 ("The two discretionary rulings in this case were non-routine, decided in favor of the government, and *challenged on appeal*.") (emphasis added). Thus, like in *Williams*, the totality of the facts in this case show there is little risk of unfairness in upholding Gmoser's conviction.

In contrast, the risk of injustice to the United States is significant. A retrial of this matter would require the United States to present complex trial testimony from investigators from multiple jurisdictions. It would require again securing and coordinating multiple experts for both parties. Doc. 340, at 26. Significantly, a retrial would require the United States to again solicit

testimony from cooperating witnesses and defendants, this time long after they have received

consideration for their cooperation. The time and resources required to retry Gmoser would

likely divert resources from other cases. *Williams*, 949 F.3d at 1065 (citing *United States v.*

*Cerceda*, 172 F.3d 806, 814 (11th Cir. 1999)). The first *Liljeberg* factor therefore favors denying

Gmoser's request for new trail.

II. THE RISK OF INJUSTICE IN OTHER CASES

Next, the Court must evaluate the risk that denying Gmoser's request for a new trial will

produce injustice in future cases. Here, Defendant points out that although the court in *Williams*

thought Judge Bruce's public reprimand was sufficient to curb his misconduct, Judge Bruce

recently made inappropriate campaign contributions to a senator involved in his appointment to

the federal bench. Defendant thus argues "it certainly can't help foster confidence in the Judge's

conduct that this incident happened so close in time to him being involved in this ex parte

scandal." Doc. 336, at 7, Doc. 336-5 (*Illinois Times* article).

Before addressing Defendant's argument, the Court first notes that allegations of Judge

Bruce's allegedly improper campaign contributions are, at this time, just allegations. Although

the media has reported on these allegations,[7] this Court is unaware of any disciplinary

investigations stemming from these reports, and it may well be the case that Judge Bruce

engaged in no wrongdoing.

Canon 5 of the Code of Conduct for United States Judges prohibits federal judges from

making contributions to political organizations or candidates, presumably for the same laudable

---

[7] However, the media reports were based off of publicly available information from the Federal Election Commission. *See* Federal Election Commission, Individual Contributions, available at https://www.fec.gov/data/receipts/individual-contributions/?contributor_name=Colin+Bruce&contributor_zip=61874 (last visited July 29, 2020). *See also* Itemized Receipts, available at https://docquery.fec.gov/cgi-bin/fecimg/?201801230200047274 (dated December 2017), https://docquery.fec.gov/cgi-bin/fecimg/?201907119150562642 (dated June 2019).

reasons the federal recusal statute was established—to avoid the appearance of bias or favor by federal judges. Thus, while the Court recognizes that the allegations regarding Judge Bruce's political donations have not been proven, the Court accepts as true for the purposes of this Opinion that Judge Bruce engaged in improper campaign contributions. However, this argument appears better suited for the third *Liljeberg* factor—the risk of undermining the public's confidence in the judicial process. Moreover, Judge Bruce's alleged improper campaign contributions appear unrelated to any case he presided over, and there is nothing in the record to suggest Judge Bruce continued to engage in ex parte communications after his reprimand or that his political donations evince a risk that he will not be fair in future cases. *See Del Vecchio*, 31 F.3d at 1372 ("[B]ad appearances alone do not require disqualification."). The second *Liljeberg* factor also favors denying Gmoser's request for a new trial.

### III. The Risk of Undermining the Public's Confidence in the Judicial Process

Finally, the Court must assess the risk that denying Gmoser's request will undermine the public's confidence in the judicial process. In *Williams*, the court noted this factor was "a close call." 949 F.3d at 1065. Ultimately, the court relied upon the fact that Williams was convicted by a jury and none of Judge Bruce's pretrial or trial rulings suggested any actual bias. *Id*. at 1065–66. Additionally, the court reasoned that "overturning a jury verdict based purely on the appearance of bias creates a risk that the public will lose confidence in the judicial process." *Id*. at 1066. For the reasons discussed above, the same considerations that guided the *Williams* court apply equally here—Gmoser was convicted by a jury and none of Judge Bruce's pretrial or trial rulings suggested any actual bias. *Cf. United States v. Orr*, No. 19-1938, 2020 WL 4582197, at *7 (7th Cir. Aug. 10, 2020) ("Judge Bruce exercised substantial discretion by admitting evidence

of Orr's drug dealing and by permitting the prosecutor to cross-examine Orr on his felony conviction for dealing drugs. These evidentiary decisions were particularly consequential because they bolstered the prosecution's case, which rested on circumstantial evidence and credibility calls. Given these discretionary rulings, upholding Orr's conviction may damage the public's confidence in the impartiality of the judiciary. For these reasons, the final *Liljeberg* factor favors vacating Orr's conviction."). Moreover, while allegations of Judge Bruce's improper campaign contributions, if true, might undermine the public's confidence in the judicial process, the alleged contributions are both speculative and remote from the facts of this case, and thus carry little, if any weight. Accordingly, the Court finds the third *Liljeberg* factor weighs against granting a new trial in this case. Finally, when analyzed together, the Court finds the *Liljeberg* factors as a whole weigh against granting for a new trial in this particular case. In reaching this conclusion, the Court does not rule out the possibility that Judge Bruce's ex parte communications might warrant the grant of a new trial in some other case. However, like the Seventh Circuit noted in *Williams*, "this is not one of those cases." 949 F.3d at 1065.

## CONCLUSION

For the reasons set forth above, Defendant's Motions (Docs. 309, 318, 336) are DENIED.


Signed on this 17th day of August, 2020.

<u>s/ James E. Shadid</u>
James E. Shadid
United States District Judge

28